# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**KELLEE KENDELL,**

        **Plaintiff,**

    **v.**                               **Civil Action 2:20-cv-985**

                                            **Magistrate Judge Jolson**

**CLEMENT BURR SHANKLIN, et al.,**

        **Defendants.**

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), (*see* Docs. 38, 39), is before the Court on the following:  Defendant Pinnacle Global Investments LLC's ("Pinnacle") failure to obtain counsel in violation of this Court's express orders; Plaintiff's Motions for Attorney Fees (Docs. 14, 16, 17, 18); Defendants' Motions to Dismiss for Failure to State a Claim (Docs. 19, 24, 25); Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 34); and Plaintiff's Motion to Compel (Doc. 46).

The Motions are resolved as follows:  The Clerk is **ORDERED** to enter default against Defendant Pinnacle Global Investments LLC, and Plaintiff shall file a Motion for Default Judgment against it within twenty-one (21) days of the date of this Opinion and Order. Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 34) is **DENIED**.  Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 19) is **GRANTED in part and DENIED in part**.  Specifically, Defendant Clement Shanklin's Motion to Dismiss Plaintiff's breach of contract, fraud in the inducement, promissory estoppel, and unjust enrichment claims is **DENIED**. Plaintiff may proceed with these claims against Defendant Clement Shanklin.  But Defendants'

Motion to Dismiss Plaintiff's claims for assault, invasion of privacy, emotional distress, and civil conspiracy is **GRANTED**, and these claims are **DISMISSED**.  As these are the only claims against Defendants George Shanklin and Dolly Days, they are **DISMISSED** from this action, leaving Clement Shanklin the only Defendant in this matter.  Consequently, Defendants George Shanklin's and Dolly Days' Motions to Dismiss for Failure to State a Claim (Docs. 24, 25) are **DENIED as moot**.  Plaintiff's Motions for Attorney Fees (Docs. 14, 16, 17, 18) are **DENIED without prejudice to refiling**.  Finally, because the Court has dismissed Defendants George Shanklin and Dolly Days from this case, it need not consider Plaintiff's Motion to Compel discovery from them. (*See generally* Doc. 46).  As for Plaintiff's request to compel discovery from Defendant Pinnacle, (s*ee id*.), the Court will consider it upon review of Plaintiff's Motion for Default Judgment against Pinnacle.  Defendant Clement Shanklin is **ORDERED** to respond to Plaintiff's Motion to Compel (Doc. 46) within fourteen (14) days of the date of this Opinion and Order.

## I.    BACKGROUND

This case involves a relationship turned sour.  Plaintiff Kellee Kendell first met Defendant Clement Shanklin in 1989 in Columbus, Ohio.  (Doc. 1, ¶ 6).  Decades passed, and the two reconnected over Facebook in February 2017.  (*Id*.).  At that time, Plaintiff lived in Atlanta, Georgia, and the two would travel back and forth between Columbus and Atlanta to visit one another.  (*Id*., ¶ 7).  Plaintiff alleges that, during these visits, Clement Shanklin "display[ed] a false sense of his resources" and "convinced Plaintiff" to cohabitate—with the promise that he "would carry his share of the load."  This "empty" promise, says Plaintiff, was the first of many.  (*Id*.). Yet, Plaintiff says she still believed Clement Shanklin's promises in November 2017, and he moved to Atlanta to live with her.  Plaintiff claims that this arrangement was premised on a specific

promise: Clement Shanklin "would reimburse [her] for his share of living expenses and pay her car note[.]" (*Id.*, ¶ 8). Plaintiff now claims this was all a scam.

Plaintiff further alleges that Clement Shanklin's scheme was not his alone. Instead, says Plaintiff, it was a family affair. With his siblings, George Shanklin and Dolly Days, Clement Shanklin ran an investment company, Pinnacle. (*Id.*, ¶¶ 5, 9). To further his "confidence trick," Plaintiff avers that Clement Shanklin "involve[d]" her in Pinnacle's business in an effort to "reassure[]" her he was flush enough to pay her back. (*Id.*). To perpetuate the scheme, Clement Shanklin "would show Plaintiff email[s] [and] text messages with transaction codes from numerous banks," as well as "conversations he was having with numerous brokers regarding transactions." (*Id.*).

Based upon repeated assurances of repayment, Plaintiff says she "continued to divert funds she would have otherwise used to pay [] her credit cards, car note and mortgage to pay [Clement] Shanklin's living expenses[.]" (*Id.*, ¶ 10). And that was not the end of it according to Plaintiff. "Observing [her] significant stress and mental anxiety," Clement Shanklin "kept his confidence trick alive" by telling her he had a sizeable UPS retirement account and promising he would use these funds to repay her. (*Id.*). Plaintiff alleges Clement Shanklin's empty promises did her real harm because she ultimately had to sell her house "to avoid foreclosure." (*Id.*).

When Plaintiff eventually realized Clement Shanklin's alleged scheme, she kicked him out of her house, and he returned to Columbus. (*Id.*, ¶ 11). Still, he "continued to reassure [her] that he would satisfy his debt," which included "living expenses, a new house, and a new car." (*Id.*). According to Plaintiff, Clement Shanklin estimated his debt to be $400,000. (*Id.*).

Despite his alleged promises to repay, Plaintiff received nothing. So, in February 2020, she sued him, along with his siblings, George Shanklin and Dolly Days, and their investment

company, Pinnacle.  (*See* Doc. 1).  Plaintiff seeks compensatory and punitive damages for Defendants' alleged: (1) breach of contract; (2) fraud in the inducement; (3) assault; (4) invasion of privacy; (5) emotional distress (6) civil conspiracy; (7) promissory estoppel; and (8) unjust enrichment.  (*See generally* Doc. 1).  Defendants have filed multiple dispositive motions.  (*See* Docs. 19, 24, 25, 34).  Defendant Pinnacle attempted to join these Motions, but as explained below, has failed to secure counsel in this case, and may not appear in this Court as a result.  The Court addresses that issue first.

## II.    DEFENDANT PINNACLE'S FAILURE TO OBTAIN COUNSEL

Defendants in this case are proceeding without the assistance of counsel.  But the Court has cautioned Pinnacle that, as an LLC, it must secure counsel in order to avoid being found in default.  The Court first issued a Show Cause Order on April 22, 2020, explaining the well-settled rule that a corporation may appear in federal court only through licensed counsel.  (Doc. 20). Defendant George Shanklin, purportedly on behalf of Pinnacle, responded to the Court's Show Cause Order, stating that Pinnacle is insolvent and that he should be able to appear in Court on its behalf. (Doc. 27).  The Court reiterated that the law does not allow this and again ordered Pinnacle to secure counsel within thirty days—warning that failure to do so would result in default being entered against it.  (Doc. 28).

On June 17, 2020, the Court held a preliminary pretrial conference with the parties, and Defendant George Shanklin represented that Pinnacle would not be retaining counsel due to insufficient funds.  Once more, the Undersigned noted the consequence of that decision and afforded Pinnacle a final chance to secure counsel.  (Doc. 40).  To date, Pinnacle remains unrepresented.  As a result, default must be entered.  The Court has considered lighter sanctions, but Pinnacle has made clear that it is not going to retain counsel.  "[A] less drastic remedy,"

therefore, would do no good. *Barrette Outdoor Living, Inc. v. Mich. Resin Reps., LLC,* No. 11-13335, 2013 WL 1799858, at *8 (E.D. Mich. Apr. 5, 2013), *report and recommendation adopted sub nom. Barrette Outdoor Living v. Mich. Resin Reps., LLC*, No. 11-13335, 2013 WL 1800356 (E.D. Mich. Apr. 29, 2013) (recommending that LLC defendant be found in default for failing to secure counsel); *see also Williams v. Dearborn Motors 1, LLC*, No. 17-12724, 2020 WL 1242821, at *3 (E.D. Mich. Mar. 16, 2020) ("[W]here a corporation has repeatedly failed to appear by counsel or where the corporate defendant has been under an order of the court to appoint counsel for an extended period of time, a default judgment may be entered against it pursuant to Rule 55."). The Clerk is thus **ORDERED** to enter default as to Defendant Pinnacle Global Investments LLC.

But this is not the end of the road for Pinnacle. "A defendant's default does not in itself warrant the court in entering a default judgment." *Williams*, 2020 WL 1242821, at *3. Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Id.* (quotation marks and citation omitted). Accordingly, Plaintiff is **ORDERED** to file a Motion for Default Judgment within twenty-one (21) days of the date of this Opinion and Order. If, ultimately, the Court finds that "the facts [of the Complaint] do not sufficiently state a claim [against Pinnacle], it will not enter default judgment against" it. *Id.* (citation omitted).

### III. MOTION TO DISMISS FOR LACK OF JURISDICTION (Doc. 34)

The Court turns now to Defendants' dispositive motions, and first addresses Defendants' jurisdictional challenge. (*See* Doc. 34). Defendants contend that this Court cannot adjudicate this case because the amount in controversy does not exceed the jurisdictional threshold of $75,000. (*See generally id.*). They maintain that the disputed amount is much less, "closer to [the] $30–35,000 range." (*Id.* at 3).

**A. Standard**

For this Court to have subject matter jurisdiction in a diversity case, there must be complete diversity of citizenship, and the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. "To grant a motion to dismiss for lack of jurisdiction, '[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Middleton v. Santander Consumer USA*, No. 2:15-CV-3054, 2016 WL 1556060, at *2 (S.D. Ohio Apr. 18, 2016) (quoting *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009)). "Only in the unusual case where it is certain that a plaintiff cannot possibly recover the jurisdictional amount will a court disregard the plaintiff's prayer for relief." *Cook v. Payne*, No. CIV.A. 4:05CV-176, 2006 WL 626403, at *2 (W.D. Ky. Mar. 8, 2006) (collecting cases). "Thus, if a plaintiff brings an action in federal court and a defendant seeks dismissal on the amount in controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith." *Id.* (citing *Wood v. Stark Tri-County Bldg. Trades Council*, 473 F.2d 272, 273 (6th Cir. 1973)).

**B. Discussion**

Defendants make two general arguments in their Motion. First, they attack the merits of Plaintiff's Complaint, asserting they are not liable for the conduct alleged. (*See generally* Doc. 34). But "it is immaterial that [Plaintiff] may ultimately fail to recover relief which exceeds $75,000 in value." *Bellsouth Telecomms.*, 2016 WL 4030975, at *8 (citing *St. Paul Mercury*, 303 U.S. at 288–299 ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction.")). Nor can the Court accept Defendants' generalized claim that the amount in controversy is closer to $30,000. *See Bellsouth Telecomms.*, 2016 WL 4030975 (citing *EQT Gathering, LLC v. Webb*, 2014 WL 1577055, at *3

(E.D. Ky. 2014) ("Generalized claims that the asserted amount in controversy is unverified or unproven are not enough to show to a legal certainty that the value of relief is below the jurisdictional amount.")).

Defendants also accuse Plaintiff of acting in bad faith. (Doc. 34 at 3–4). They note that Plaintiff's demands during settlement negotiations have changed. (*See id.*). But that is not a part of the record, and is not indicative of bad faith anyhow. Rather, "[b]ad faith is established only if it appears to a legal certainty that the claim is for less than the jurisdictional amount." *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 601 (W.D. Tenn. 2011) (quotation marks and citations omitted). And Defendants have not shown this to be the case. Specifically, they have not shown to a legal certainty that Plaintiff's allegation that Defendant Clement Shanklin promised to pay her $400,000 to compensate for "an automobile, house, [and] half of nineteen months of living expenses," (Doc. 36 at 4), is untrue or was made in bad faith. (*See also* Doc. 36 at 8, ¶ 3 (attesting that Clement Shanklin repeatedly promised to repay her this amount and "provided [her] with electronic pictures of[] numerous houses and cars the prices of which made the $400,000 realistic")).

In sum, Defendants have not shown to a legal certainty that the amount of controversy falls below the jurisdictional amount. "[I]f discovery later reveals that the true value of [Plaintiff's] claims 'never satisfied the jurisdictional requirement,' the Court must—by motion or on its own initiative—dismiss the case." *Hall v. Allen*, No. CIV. 14-116-ART, 2014 WL 6882264, at *2 (E.D. Ky. Dec. 4, 2014) (quoting *Jones v. Knox Expl. Corp.*, 2 F.3d 181, 183 (6th Cir. 1993)). At this stage, however, Plaintiff's Complaint survives Defendants' jurisdictional challenge, and Defendants' Motion (Doc. 34) is **DENIED**.

## IV. DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Doc. 19)

Defendants also move to dismiss Plaintiff's Complaint for failure to state a claim for relief. (Doc. 19). While much of their Motion attacks the merits of Plaintiff's claims, they also assert, as a general matter, that Plaintiff's allegations fail to state a plausible claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure, (*see id.* at 4–5). Given Defendants' pro se status, the Court construes Defendants' Motion as challenging the sufficiency of Plaintiff's allegations.

And Defendants have a point. Much of Plaintiff's Complaint lacks enough factual allegations to support her claims. This is true despite having incorporated by reference factual allegations appearing earlier in the Complaint. In other words, the Court has been lenient regarding the well-established law counseling litigants to avoid the pleading practice of incorporating by reference. *See Advanced Coatings Int'l, Inc. v. Fla. CirTech, Inc.*, No. 5:11CV2107, 2012 WL 3067375, at *4 (N.D. Ohio July 27, 2012). ("[T]he Court has time and again counseled litigants that such incorporation by reference is insufficient. If specific facts support a particular cause of action, those facts must be stated within that cause of action.") Even so, the Court's generosity saves only portions of Plaintiff's claims.

### A. Rule 12(b)(6) Standard

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Twombly*, 550 U.S. at 57. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (holding that Plaintiff must set forth specific, well-pleaded facts, not just conclusory allegations). Said differently, while "detailed factual allegations" are not required under Rule 8(a)(2)'s "short and plaint statement" rule, the law "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

As for which state's substantive law governs Plaintiff's eight state law claims, the Court applies Ohio's choice of law principles. *Tele-Save Merch. Co. v. Consumer Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987). Under Ohio law, "'an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken.'" *Mitchell v. Michael Weinig, Inc.*, No. 2:17-CV-905, 2018 WL 4051826, at *2 (S.D. Ohio Aug. 24, 2018), *reconsideration denied*, No. 2:17-CV-905, 2019 WL 699351 (S.D. Ohio Feb. 20, 2019) (quoting *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 115 (Ohio 2006)). Here, while Georgia law potentially could apply to Plaintiff's claims, the Court need not conduct a choice of law analysis because resolution of Defendants' Motion would be the same under either Ohio or Georgia law. *See Hirschvogel Inc. v. Allison Transmission, Inc.*, No. 2:17-CV-458, 2019 WL 2075934, at *5 (S.D. Ohio May 10, 2019) (holding that the Court would "reach the same result applying [the] respective laws [of Indiana and Ohio]") (quotation marks and citation omitted). In such a situation, "a choice of law determination is unnecessary because there is no conflict, and the laws of the forum state apply." *Id.* (quotation marks and citation omitted).

Moreover, it is worth noting that the parties appear to agree that Ohio law applies. (*See* Doc. 19 at 7–8 (discussing Ohio case law); *see generally* Doc. 22 (same)). "When parties agree

about the choice of law to be applied, [ ] the [C]ourt need not address choice of law questions." *Kirsch v. Dean*, No. 3:16:CV-00299-CRS, 2016 WL 4536444, at *2 (W.D. Ky. Aug. 30, 2016) (collecting cases); *see also Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 673 n.2 (6th Cir. 1999) ("We need not inquire into choice-of-law issues; the parties did not dispute that Ohio law applied."); *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prod. Inc.*, No. 2:02-CV-1288, 2007 WL 894833, at *4 (S.D. Ohio Mar. 22, 2007) (applying Ohio law and declining to "engage in a choice of law analysis at this point" where the parties appeared to agree that Ohio law governed). The Court, therefore, applies Ohio substantive law to Plaintiff's claims.

### B. Breach of Contract (Count 1)

In her first claim, Plaintiff brings a breach of contact claim against Clement Shanklin. (Doc. 1, ¶ 17). A breach of contract claim under Ohio law has four elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage to the plaintiff. *Bonds v. Univ. of Cincinnati Med. Ctr.*, No. 1:15-CV-641, 2017 WL 3671239, at *5 (S.D. Ohio Aug. 24, 2017) (citations omitted).

Plaintiff alleges enough facts as to each. To start, while it does not appear that Plaintiff and Clement Shanklin entered into a written contract, that fact is not fatal to Plaintiff's claim. "A contract includes every description of agreement or obligation, whether verbal or written, whereby one party becomes bound to another . . . to perform or omit to do a certain act." *Id*. (quotation marks and citation omitted). "The elements of a valid contract include an offer, acceptance, mutual assent, and consideration, and the parties must have a meeting of the minds on the essential contract terms." *Id*. (citing *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002)).

As alleged, Plaintiff and Clement Shanklin had a mutual agreement. Clement Shanklin would live with Plaintiff and she would cover his expenses, and he "would reimburse her for

expenses she incurred on his behalf such as living expenses, damage to her credit, loss of her house, and damage to her car." (Doc. 1, ¶ 17). As for consideration—and contrary to Clement Shanklin's suggestion otherwise (*see* Doc. 19 at 6)—Ohio law recognizes that, while love and affection do not constitute consideration, a breach of contract claim may arise from "mutual obligations and benefits (i.e., both parties had a right to reside at the property and, equally shared costs necessary to maintain the house . . . )[.]" *Williams v. Ormsby*, 966 N.E.2d 255, 264 (Ohio 2012). And that is what Plaintiff says happened here.

As to the remaining elements, Plaintiff avers that she held up her end of the bargain by allowing Clement Shanklin to live with her and by paying his living expenses. (Doc. 1, ¶ 18). But, Plaintiff says, Clement Shanklin breached their agreement. "To prove a breach of contract under Ohio law, a plaintiff must establish the existence of a contract, performance by the plaintiff, breach by the defendant, and damage to the plaintiff." *Bonds*, 2017 WL 3671239, at *5. "A party breaches a contract if it 'fails to perform according to the terms of the contract or acts in a manner that is contrary to its provisions.'" *Id.* (quoting *Savedoff v. Access Grp., Inc.,* 524 F.3d 754, 762 (6th Cir. 2008)). According to Plaintiff, Clement Shanklin repeatedly promised he would repay her "when funds he expected to receive in the near term came into his possession, custody, and/or under his control," (Doc. 1, ¶ 17), but, ultimately, "refused to reimburse [her]," (*id*., ¶ 19). Finally, Plaintiff alleges his breach caused her "damages in the amount of the promised reimbursement." (*Id*., ¶ 21).

In sum, Plaintiff has pled enough as her allegations are more than merely "plausible" and "raise a right to relief beyond the speculative level." *Twombly*, 550 U.S. at 555. Defendant Clement Shanklin's Motion to Dismiss Plaintiff's breach of contract claim (Count 1) is, therefore, **DENIED**.

### C. Fraud in the Inducement (Count 2)

In Count 2, Plaintiff alleges that Clement Shanklin fraudulently induced her to allow him to live with her and cover his expenses. "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the [agreement] or other wrongful conduct induced a party to enter into the [agreement]." *MRI Software, LLC v. Pac. Capital Mgmt., Inc.*, No. 1:15 CV 1268, 2016 WL 1436067, at *3 (N.D. Ohio Apr. 12, 2016) (alterations in original) (quotation marks and citation omitted). That is what Plaintiff claims Clement Shanklin did—lured her under false pretenses to allow him to live with her and pay for his living expenses. (*See generally* Doc. 1, ¶¶ 22–27).

Under Ohio law, a fraud in the inducement claim has six elements: (1) a representation, or where there is a duty to disclose, concealment of fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent to mislead another into relying on it; (5) justifiable reliance; and (6) a resulting injury. *MRI Software*, 2016 WL 1436067, at *3 (citations omitted). Relevant here, a plaintiff may properly plead both a breach of contract claim and a fraud in the inducement claim "because the duty not to breach a contract is separate and independent from the duty not to deceive a party entering into an agreement or contract." *Burrows v. Fuyao Glass Am. Inc.*, No. 3:17-CV-00186-TMR, 2017 WL 6262189, at *4 (S.D. Ohio Dec. 8, 2017) (quotation marks and citations omitted).

Plaintiff has pled enough to satisfy each element. To begin, she alleges that Clement Shanklin intentionally misrepresented his financial resources "to lure [her] into a false sense of comfort." (Doc. 1, ¶ 7). At this stage, the Court may infer that his misrepresentation was material to the formation of the contract as it is reasonable to assume that Plaintiff would not have agreed

to cover Clement Shanklin's half of the expenses if she knew he was insolvent. *See Tarrier Steel Co. v. Wesex Corp.*, No. 2:18-CV-528, 2019 WL 2579166, at *2 (S.D. Ohio June 24, 2019) (citation omitted) ("The Sixth Circuit allows inferential allegations like this one to be sufficient in pleadings, because it is based in fact and not conclusory."). Discovery may reveal otherwise, but Plaintiff's allegations are enough for now.

Next, Plaintiff alleges that Clement Shanklin backed up his misrepresentation with false proof in the form of "text messages with transaction codes from numerous banks and numerous conversations he was having with numerous brokers regarding transactions." (Doc. 1, ¶ 9). Based upon these purportedly false assurances, Plaintiff "rel[ied] on [him] . . . that funds he expected would arrive soon, [and] [she] continued to divert funds she would have otherwise used to pay on her credit cards, car note and mortgage to pay [his] living expenses that he continued to promise to repay." (*Id*., ¶ 10). Lastly, as for a resulting injury, Plaintiff alleges she was forced to sell her home "to avoid foreclosure," suffered "worsening finances," and incurred "damages in the amount of expenses and/or losses she incurred for and on behalf of [Clement] Shanklin." (*Id*., ¶¶ 10, 27).

Based on the foregoing, Plaintiff has alleged sufficient facts to support a plausible fraud in the inducement claim against Clement Shanklin, and his motion to dismiss the claim (Count 2) is **DENIED**.

### D. Assault (Count 3)

Plaintiff's next handful of claims are thin and devoid of concrete factual allegations. Her claim for civil assault against Defendants Clement and George Shanklin is a good example. The claim is based on her allegation that Clement Shanklin "threatened [her] with a warning that for $20,000 she could be killed." (Doc. 1, ¶ 29). Apparently, as part of the alleged threat, Clement Shanklin "disclos[ed]" that his brother, George Shanklin, "performed paid legal work for

13

individuals with whom he was formerly imprisoned and who at [George] Shanklin's request could harm people who refused to pay him money[.]" (*Id.*, ¶ 29 n.2). George Shanklin allegedly made a similar threat, telling Plaintiff "this will end badly." (*Id.*, ¶ 30).

Two critical deficiencies doom Plaintiff's claim. To begin, there are sparse factual details surrounding the alleged threats from which the Court could reasonably infer Defendants Clement or George Shanklin assaulted her. The tort of assault in Ohio is "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Schuler v. Vill. of Newcomerstown*, No. 5:16-CV-1466, 2017 WL 1199170, at *14 (N.D. Ohio Mar. 31, 2017). Importantly, vague threats of future harm, like those alleged by Plaintiff, are not enough. *Schuler*, 2017 WL 1199170, at *14. Rather, Plaintiff must set forth facts suggesting she knew "with substantial certainty" that Defendants' verbal threats "would bring about harmful or offensive conduct." *Id.* Even drawing all reasonable inferences in Plaintiff's favor, the Court cannot glean a certainty of harm from the Complaint. *See, e.g.*, *Wilcher v. Warren Cty., Tenn.*, No. 4:15-CV-17, 2016 WL 10590201, at *6 (E.D. Tenn. Dec. 28, 2016) (applying a definition of civil assault similar to Ohio's and concluding that the threat, "if you ever send a piece of mail to my property again in my house I'll whip your ass" was "little more than a future contingency that fails to suggest an immediacy of harm").

Moreover, her allegations are missing a crucial set of facts. On top of "a willful threat or attempt to harm or touch another offensively," there must have been a "definitive act by one who ha[d] the apparent ability to do the harm or to commit the offensive touching." *Gerber v. Veltri*, 203 F. Supp. 3d 846, 851 (N.D. Ohio 2016), *aff'd*, 702 F. App'x 423 (6th Cir. 2017). Was there a definitive act here? Plaintiff does not say. This omission, too, dooms her claim for civil assault. *See, e.g.*, *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 621–22 (6th Cir. 2014) ("Although

14

Plaintiffs were threatened by the officers, who had the apparent ability to do harm or commit an offensive touching, Plaintiffs have not alleged facts to demonstrate the occurrence of a definitive act accompanying the threats."); *Klein v. United States*, No. 3:15-CV-134, 2015 WL 6736114, at *7 (S.D. Ohio Nov. 4, 2015) (quotation marks omitted) (dismissing claim for assault where plaintiff failed to "allege any definitive act by anyone who had the apparent ability to do the harm or to commit the offensive touching"). Accordingly, Plaintiff's assault claim (Count 3) is **DISMISSED**.

### E. Invasion of Privacy (Count 4)

Plaintiff's claim for invasion of privacy against Defendants Clement and George Shanklin also has fatal flaws. It appears that Plaintiff is alleging that by contacting her via phone, email, and text message regarding Clement Shanklin's promise to repay Plaintiff, the Shanklin brothers invaded her privacy in violation of Ohio law. (Doc. 1, ¶ 35). But apart from alleging she and her attorney, at some unspecified date, requested they stop contacting her, her claim has no other support. Defendants' conduct as alleged is a far cry from the requisite "'wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation of ordinary sensibilities.'" *Luis v. Zang*, 833 F.3d 619, 642 (6th Cir. 2016) (quoting *Welling v. Weinfeld*, 866 N.E.2d 1051, 1053 (Ohio 2007)).

Nor does Plaintiff explain how she had "a 'reasonable expectation of privacy' in the area or subject matter in which the alleged intrusion occur[red]." *Luis*, 833 F.3d at 642 (quoting *Retuerto v. Berea Moving Storage & Logistics*, 38 N.E.3d 392, 406 (Ohio Ct. App. 2015)). This is especially true because it appears that she and Clement Shanklin routinely discussed his alleged promise to pay her back. *Compare Luis*, 833 F.3d at 642 (quotation marks omitted) (finding plaintiff's allegation that defendants installed a spying software "to intercept and record

[plaintiff's] conversations and actions to which they would not otherwise be privy" stated a claim for invasion of privacy under Ohio law) *with Moran v. Lewis*, 114 N.E.3d 1254, 1258–59 (Ohio Ct. App. 2018) (holding that defendant's installation of a tracking device on plaintiff's vehicles failed to demonstrate "an intrusion physical or otherwise, into another's solitude or private affairs").

Because Plaintiff has failed to state a plausible claim for invasion of privacy under Ohio law, the claim (Count 4) is **DISMISSED**.

### F. Emotional Distress (Count 5)

Plaintiff's emotional distress claim fares no better. In conclusory fashion, she asserts that "[Clement] Shanklin's and/or [George] Shanklin's threatening and/or fraudulent conduct was outrageous conduct intentionally or recklessly damaging Plaintiff," and that "[t]he criminality of this conduct demonstrates this civilized society's distaste and intolerance." (Doc. 1, ¶¶ 39–40). These allegations are the sort of "formulaic recitation of the elements of a cause of action" the Supreme Court rejected in *Twombly*. 550 U.S. at 555.

Ohio law has a particular distaste for such conclusory allegations of emotional distress. "To say that Ohio courts narrowly define extreme and outrageous conduct would be something of an understatement.'" *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 870 (N.D. Ohio 2013) (quotation marks and citations omitted). Even incorporating by reference her cursory claims of "deteriorating finances" (Doc. 1, ¶ 10) or "significant stress and mental anxiety" caused by the same, (*id.*), Plaintiff's allegations fail to describe conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in civilized community,'" *Kovac*, 930 F. Supp. 2d at 870 (quoting *Long v. Ford Motor Co.*, 193 F. App'x 497, 503 (6th Cir. 2006)). They do not come close. *See, e.g.*,

16

*Swartz v. DiCarlo*, No. 1:12CV3112, 2014 WL 4955801, at *4 (N.D. Ohio Sept. 29, 2014) (alterations in original) (internal quotation marks and citation omitted) ("Where is the claim of sleepless nights, inability to work for a period of time, or that close or familial or personal relationships have suffered serious strain due to the additional stress from the situation, or the change in habitual makeup? In Defendant's Counterclaim none of these are present. Even though Defendant outlines in varying detail *why* he has suffered severe emotional distress, he fails to outline *how* he has suffered.").

In short, "[Plaintiff] has not supported [her] legal conclusion with factual allegations that might plausibly give rise to a finding that [Defendants'] conduct was outrageous and extreme." *Kovac*, 930 F. Supp. 2d at 870–71; *see also Swartz*, 2014 WL 4955801, at *4 ("[Defendant] has not sufficiently pled that he has suffered a severe emotional injury. Defendant has only stated that he suffered 'severe emotional distress' and nothing else. There are no specifics as to how he suffered."). As such, Plaintiff's emotional distress claim (Count 5) is **DISMISSED**.

### G. Civil Conspiracy (Count 6)

Perhaps Plaintiff's most insufficiently pled claim is that for civil conspiracy. She states, again in conclusory fashion, that "Defendants, or at least two of them, acted in concert by implicit or explicit agreement, to fraudulently deprive Plaintiff of her property." (Doc. 1, ¶ 43). Again, this sort of "unadorned, the defendant-unlawfully-harmed-me accusation" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 677–78. Like her claim for emotional distress, her allegations fall far below Ohio's pleading standard for civil conspiracy. "It is well settled that conspiracy claims must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Coley v. Lucas County, Ohio*, No. 3:09 CV 8, 2014 WL 273235, at *11 (N.D. Ohio Jan. 23, 2014), *aff'd*, 799 F.3d 530 (6th Cir.

2015) (quotation marks and citations omitted). Said plainly, "[t]he requirements governing civil conspiracy pleadings are 'relatively strict.'" *Id.* (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)).

To satisfy that heightened standard, a plaintiff must set forth facts showing a "'a malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages.'" *Coley*, 2014 WL 273235, at *11 (quoting *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998)). Importantly, while a conspiracy "does not require a showing of an express agreement between defendants," there must be "'a common understanding or design, even if tacit, to commit an unlawful act.'" *Coley*, 2014 WL 273235, at *11 (quotation marks and citation omitted). There is nothing in the Complaint from which the Court could infer the existence of a civil conspiracy. Plaintiff makes only passing references to George Shanklin and Dolly Days and does not explain how they were involved with Clement Shanklin's alleged misconduct. Vague allegations that they "knew that [Clement Shanklin] did not have the requisite resources" to reimburse Plaintiff, (Doc. 1, ¶ 8), or that George Clement "invited [her] to go to Spain to wire transfer funds . . . in furtherance of a Pinnacle transaction," (*id.*, ¶ 44 n.4), do not give rise to an inference of a conspiracy to commit fraud. Nor does Plaintiff describe "a common understanding or design, even if tacit, to commit an unlawful act." *Coley*, 2014 WL 273235, at *11–12 (dismissing civil conspiracy claim where plaintiff made no allegations as to [w]hen, where, why, or how" "the conspiracy occurred or how it resulted in damages").

At bottom, like many of her other claims, Plaintiff relies on "mere legal conclusions, not material facts necessary to support a claim of civil conspiracy." *Advanced Coatings*, 2012 WL 3067375, at *4 ("Perhaps the only arguable paragraph that contains specific allegations [regarding

alleged civil conspiracy] . . . alleges that Johnson shared confidential and proprietary information with FCT. However, again, the complaint's paragraphs containing this claim fail to allege what this information was or when it was shared. Thus, it falls well short of the pleading requirements."). For these reasons, Plaintiff's civil conspiracy claim (Count 6) is **DISMISSED**.

### H. Promissory Estoppel (Count 7)

Plaintiff corrects course with her final two claims. In Count 7, she alleges that Clement Shanklin is liable under the equitable doctrine of promissory estoppel, which enforces a party's right to rely on certain promises. Under that doctrine, "'a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Irth Sols., LLC v. Windstream Commc'ns, LLC*, No. 2:16-CV-219, 2017 WL 367146, at *2 (S.D. Ohio Jan. 25, 2017) (quoting *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 154 (Ohio 1985)).

That is precisely what Plaintiff alleges happened here. And her Complaint provides allegations satisfying each of the four elements of a promissory estoppel claim: (1) a clear and unambiguous promise; (2) upon which it would be reasonable and foreseeable for the party to rely; (3) actual reliance on the promise; and (4) the party was injured as a result of the reliance. *Irth Sols.*, 2017 WL 367146, at *2 (citing *Weiper v. W.A. Hill & Assocs.*, 661 N.E.2d 796, 803 (Ohio Ct. App. 1995)). As for a clear and unambiguous promise, Plaintiff alleges that Clement Shanklin "promised to pay [her] funds she expended and/or losses she incurred for and/or on his behalf such as living expenses, loss of residence, service of automobile note, damage to credit, and damage to automobile." (Doc. 1, ¶ 47). Given the facts alleged, this "is the type [of promise] that [Clement Shanklin] would expect to induce reliance," and Plaintiff relies on more than just "vague or

19

ambiguous references." *Sutter O'Connell Co. v. Whirlpool Corp.*, No. 1:18CV2800, 2019 WL 2469202, at *4 (N.D. Ohio June 13, 2019) (quotation marks and citation omitted). Further, the Court may properly infer that she justifiably relied on this promise based upon Clement Shanklin's disclosure of "business transactions, information, and documents," purportedly backing up his steady stream of income and ability to pay. (*Id.*, ¶ 48). Finally, Plaintiff says she actually relied on his promise as she covered his expenses with the expectation that he would make good on his promise. (*See id.*, ¶¶ 49–50).

Taking these allegations at face value, Plaintiff has pled a plausible claim for promissory estoppel against Clement Shanklin. His Motion to dismiss that claim (Count 7) is **DENIED** as a result.

## I. Unjust Enrichment (Count 8)

Plaintiff has also done enough to move her final claim, unjust enrichment, beyond the pleadings. She alleges that Clement Shanklin was unjustly enriched by their alleged deal. Unlike some of Plaintiff's other state law claims, "[t]here is a low pleading standard for unjust enrichment claims, as [a] claim of unjust enrichment does not . . . fail absent essentially fraudulent conduct by the defendant. Instead, the plaintiff must plead merely that it would be inequitable for the defendant to retain the benefit or that retention of the benefit without payment therefore would be unjust." *Tarrier Steel Co.*, 2019 WL 2579166, at *2 (quotation marks and citations omitted).

Plaintiff's allegations meet that threshold. She alleges that Clement Shanklin lived with her for free; she covered his expenses; he promised he would pay her back; and he represented he had the financial means to do so. (*See generally* Doc. 1; *see also id.*, ¶ 52). Given his allegedly empty promises and misrepresentations, the Court may infer that it would be inequitable for Clement Shanklin to retain that benefit without payment. *See Tarrier Steel Co.*, 2019 WL

2579166, at *2 (citation omitted) ("The Sixth Circuit allows inferential allegations like this one to be sufficient in pleadings, because it is based in fact and not conclusory."). Finally, Plaintiff alleges she has yet to recover this money from Clement Shanklin. (Doc. 1, ¶ 11). Plaintiff has thus set forth a plausible claim for unjust enrichment against Clement Shanklin. His Motion to Dismiss that claim (Count 9) is, therefore, **DENIED**.

### J. Plaintiff's Request to Amend (Doc. 22 at 5–6)

Perhaps recognizing the bare-boned nature of her allegations, Plaintiff makes a contingent request—if the Court dismisses any part of her Complaint under Rule 12(b)(6), it should "grant[] [her] leave to amend the Complaint to address any [such] deficiency." (Doc. 22 at 6). District courts in the Sixth Circuit are reluctant to grant such requests. Specifically, "broad, open-ended, contingent requests," like Plaintiff's, "are disfavored." *Bey v. WalkerHealthCareIT, LLC*, No. 2:16-CV-01167-GCS, 2017 WL 10992207, at *2 (S.D. Ohio July 25, 2017). Accordingly, this Court routinely denies requests that "baldly ask[] for leave to amend in order to 'cure any deficiencies identified by the Court.'" *Id*. That is because "'[p]laintiffs [are] not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.'" *WalkerHealthCareIT*, 2017 WL 10992207, at *2 (quoting *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000)).

Yet that is what Plaintiff asks of the Court. "[B]oth the Court and Defendants," however, "have the right to know the allegations in this case." *WalkerHealthCareIT*, 2017 WL 10992207, at *2. Consequently, Plaintiff's request for leave to amend is **DENIED without prejudice.** *See, e.g.*, *Begala*, 214 F.3d at 784 ("Had plaintiffs filed a motion to amend the complaint prior to th[e] Court's consideration of the motion to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in

light of the proposed amendments to the complaint . . . Absent such a motion, however, Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6).").  If Plaintiff wants to amend her Complaint, she must file a proper motion satisfying the Federal Rules of Civil Procedure.  *See, e.g.*, *Gilliam v. Crowe*, No. 16-147, 2016 WL 3434026, at *3 (S.D. Ohio June 22, 2016) (denying request to amend where movant failed to provide a proposed amended complaint or otherwise describe the new allegations that he would include in his proposed amendment").

### K.  Conclusion

For the reasons explained above, Defendants' Motion to Dismiss (Doc. 19) is **GRANTED in part and DENIED in part**.  Specifically, Clement Shanklin's Motion to Dismiss Plaintiff's breach of contract, fraud in the inducement, promissory estoppel, and unjust enrichment claims (Counts 1, 2, 7, and 8) is **DENIED**.  Plaintiff may proceed with those claims against Defendant Clement Shanklin.  Defendants' Motion to Dismiss Plaintiff's claims for assault, invasion of privacy, emotional distress, and civil conspiracy (Counts 3–6) is **GRANTED**, and those claims are **DISMISSED**.  As those are the only claims against Defendants George Shanklin and Dolly Days, they are each **DISMISSED** from this action, leaving Clement Shanklin the only Defendant in this case.  Further, Plaintiff's conditional request for leave to amend (Doc. 22 at 5–6) is **DENIED without prejudice**.

## V.      REMAINING MOTIONS (Docs. 14, 16, 17, 18, 24, 25, 46)

The Court turns now to the remaining pending Motions in this matter, Defendants' Motions to Dismiss, Plaintiff's Motions for Attorney Fees, and Plaintiff's Motion to Compel.

### A.  Defendants George Shanklin's and Dolly Days' Motions to Dismiss (Docs. 24, 25)

Defendants George Shanklin and Dolly Days, in addition to filing their collective Motion to Dismiss discussed above, filed separate Motions to Dismiss for Failure to State a Claim.  (*See*

Docs. 24, 25). Because Defendants George Shanklin and Dolly Days have been dismissed from this case, (*see supra* Sec. K), their Motions to Dismiss are **DENIED as moot**.

### B. Plaintiff's Motions for Attorney Fees (Docs. 14, 16, 17, 18)

Plaintiff seeks costs and attorney fees from Defendants for failing to waive service under Rule 4(d) of the Federal Rules of Civil Procedure. (*See* Docs. 14, 16, 17, 18). Because Defendants failed to waive, she represents she paid roughly $18 for a process server and that her lawyer billed 6.25 hours in preparing and drafting the necessary motions. (*See generally id*.). Accordingly, Plaintiff seeks an award of $18.75 in costs and $546.88 in attorney's fees. (*See id*.).

Rule 4(d) of the Federal Rules of Civil Procedure provides that an individual, corporation, or association that is subject to service "has a duty to avoid unnecessary expenses of serving the summons." *See* Fed. R. Civ. P. 4(d). To that end, "[t]he plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons." *Id*. "The Rule is particularly specific in what is required for a waiver to be properly effected." *Horn-Brichetto v. Smith*, No. 3:17-CV-163, 2019 WL 921454, at *25 (E.D. Tenn. Feb. 25, 2019), *appeal dismissed*, No. 19-5275, 2019 WL 2601566 (6th Cir. May 15, 2019). The waiver notice and request must: (1) be in writing and addressed to the individual defendant, or an officer, managing, or general agent authorized to receive service; (2) name the court where the complaint is filed; (3) be accompanied by a copy of the complaint, two copies of the waiver form appended to Rule 4, and a prepaid means for returning the form; (4) inform the defendant of the consequences of waiving and not waiving service; (5) state the date the request is sent; (6) give the defendant a reasonable time of at least thirty days after the request was sent to return the waiver; and (7) be sent by first-class mail or other reliable means. Fed. R. Civ. P. 4(d).

Under Rule 4(d)(2), the defendant is liable for the costs and expenses of follow-up service when the attempt to secure a waiver of formal service has been refused, as well as the reasonable expenses of any motion required to collect the costs of the follow-up service. *See* Fed. R. Civ. P. 4(d)(2). But before a plaintiff is entitled to such an award, she must first "make a sufficient showing that [she] satisfactorily complied with Rule 4(d)(1)." *McCoy v. Carlson*, No. 3:17-CV-432, 2019 WL 2240246, at *1 (S.D. Ohio May 24, 2019), *report and recommendation adopted*, No. 3:17-CV-432, 2019 WL 2617576 (S.D. Ohio June 26, 2019) (quotation marks omitted) (collecting cases).

Here, Plaintiff represents that she sent "each of the four Defendants a Notice of Lawsuit and Request to Waive Summons, two copies of Waiver of Service of Summons, the Complaint, and a self-addressed, postage paid envelope" on February 24, 2020. (*See* Doc. 14 at 2; Doc. 16 at 2; Doc. 17 at 2; Doc. 18 at 2). But Plaintiff does not say whether these documents named the Court where the complaint was filed or informed Defendants of the consequence of failing to waive. *See* Fed. R. Civ. P. 4(d). So "the Court is unable to determine whether the Rule was fully complied with based on the representations in Plaintiff's Motion." *Horn-Brichetto*, 2019 WL 291454, at *25 (noting in relevant part that plaintiff failed to show that the notice and request named the court where the complaint was filed). "As such, this Court cannot determine, based on Plaintiff's current [M]otion, whether [she] is entitled to the expenses [and fees] [] incurred in serving Defendants." *Id*. (denying plaintiff's motion without prejudice and requiring any future motion to "include[] certifications that all of the requirements of Rule 4(d)(1) were properly adhered to"); *see also McCoy*, 2019 WL 2240246, at *2 (recommending dismissing plaintiff's motion where plaintiff "[could] not demonstrate compliance with the requirements for requesting a waiver of service under Rule 4(d)") (citing *Powers v. Collins*, No. 2:09-CV-00501, 2010 WL 3526518, at *1 (S.D.

24

Ohio Sept. 8, 2010) (denying request for costs where plaintiff failed to follow the requirements of Rule 4(d)); *Carter v. Wilkinson*, No. 2:05-CV-0380, 2007 WL 2874722, at *2 (S.D. Ohio Sept. 27, 2007), *report and recommendation adopted*, No. 2:05-CV-0380, 2008 WL 5142998 (S.D. Ohio Dec. 5, 2008) (same)).

Moreover, Plaintiff appears to rely on the fact that Defendant Clement Shanklin signed and returned the certified mail receipt accompanying his and George Shanklin's waiver documents as evidence that Defendants George Shanklin and Pinnacle received the waiver notice and forms. (*See* Doc. 16 at 4; Doc. 18 at 4). For support, Plaintiff attaches copies of these receipts. (Doc. 14-1; Doc. 16-2). She also asserts that "Defendant Clement refused to accept the Waiver Request addressed to Defendant Days" but that, because Clement Shanklin "accepte[d] certified mail transmission of the Waiver Request" sent to Defendant Days, she is "presumed yo [sic] have received the Waiver Request." (Doc. 17 at 4–5). Plaintiff attaches no evidence, for example, in the form of a sworn affidavit from her lawyer, supporting these representations, nor does she support them with adequate references to relevant legal authority in the context of Rule 4(d)(1). And it is Plaintiff's burden to do so. *See McCoy*, 2019 WL 2240246, at *2 (citing *Flores v. Sch. Bd. of DeSoto Par.*, 116 F. App'x 504, 508 (5th Cir. 2004) (noting that the movant carries "the burden to show entitlement to costs and fees" because "[o]therwise, a defendant would be forced to prove a negative, i.e., that he did not receive proper forms")); *cf. Schaller v. Nat'l All. Ins. Co.*, 496 F. Supp. 2d 887, 889 (S.D. Ohio 2007) ("The undisputed evidence before the Court indicates that National failed to comply with the Plaintiffs' request for waiver of service[.]"). At bottom, Plaintiff must provide evidence that Defendants George Shanklin, Dolly Days, and Pinnacle received the waiver documents, or at minimum, an explanation supported by binding legal authority that Clement Shanklin's signature is sufficient.

Finally, even if Plaintiff complied with the requirements of Rule 4(d), her counsel has not produced evidence, for example, in the form of a sworn affidavit, from which the Court could conclude he is entitled to $546.88 in attorney's fees. *Cf. Pennington v. Regions Mortg., Inc.*, No. 1:04-CV-718, 2005 WL 8161974, at *1 (S.D. Ohio Feb. 7, 2005), *report and recommendation adopted*, No. 1:04-CV-718, 2005 WL 8161972 (S.D. Ohio Feb. 25, 2005) (considering affidavit of plaintiff's counsel to conclude that plaintiffs "reasonably incurred $166 in costs and attorney fees").

In sum, Plaintiff has failed to show that she is entitled to an award of costs and fees.  Her Motions (Docs. 14, 16, 17, 18) are, therefore, **DENIED without prejudice to refiling**.

### C.  Motion to Compel (Doc. 46)

Finally, Plaintiff has filed a Motion to Compel discovery from Defendants.  (Doc. 46).  Plaintiff served discovery requests upon Defendants in early June 2020 and asserts that those requests have gone unanswered.  (*See generally* Doc. 46).  Because Defendants George Shanklin and Dolly Days have been dismissed as Defendants, the Court need not consider Plaintiff's Motion to Compel discovery from them.  Further, the Court will consider Plaintiff's Motion as to Defendant Pinnacle upon review of Plaintiff's Motion for Default Judgment against Defendant Pinnacle.  Defendant Clement Shanklin is **ORDERED** to respond to Plaintiff's Motion to Compel within fourteen (14) days of the date of this Opinion and Order.

### VI.    CONCLUSION

For the foregoing reasons, the Clerk is **ORDERED** to enter default against Defendant Pinnacle Global Investments LLC, and Plaintiff shall file a Motion for Default Judgment against it within twenty-one (21) days of the date of this Opinion and Order.  Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 34) is **DENIED**.  Defendants' Motion to Dismiss for Failure

26

to State a Claim (Doc. 19) is **GRANTED in part and DENIED in part**.  Specifically, Counts 3–6 are DISMISSED, and Counts 1, 2, 7, and 8 may proceed.  Because the only claims against Defendants George Shanklin and Dolly Days have been **DISMISSED**, the Clerk is **DIRECTED** to terminate them from this action.  Given this, Defendants George Shanklin's and Dolly Days' Motions to Dismiss for Failure to State a Claim (Docs. 24, 25) are **DENIED as moot**.  Plaintiff's Motions for Attorney Fees (Docs. 14, 16, 17, 18) are **DENIED without prejudice to refiling**.  As for Plaintiff's request to compel discovery from Defendant Pinnacle, (Doc. 46), the Court will consider it upon review of Plaintiff's Motion for Default Judgment against Pinnacle, and Defendant Clement Shanklin is **ORDERED** to respond to Plaintiff's Motion to Compel (Doc. 46) within fourteen (14) days of the date of this Opinion and Order.

IT IS SO ORDERED.

Date:   September 4, 2020                              /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE