IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KELLEE KENDELL,**

        **Plaintiff,**                        Civil Action 2:20-cv-985
                                                        Magistrate Judge Kimberly A. Jolson

    v.

**CLEMENT BURR SHANKLIN, et al.,**

        **Defendants.**

## OPINION & ORDER

Defendant Clement Burr Shanklin's Motion to Modify Payment Method Pursuant to Settlement Agreement (Doc. 140) and Plaintiff's "cross-request[s]" (Docs. 142, 146) are before the Court. For the following reasons, Defendant's Motion is **GRANTED IN PART and DENIED IN PART**. Plaintiff's "cross-request[s]" are **DENIED** (Doc. 142).

### I.    BACKGROUND

The Court previously summarized the background giving rise to this action:

> This case involves a relationship turned sour. Plaintiff Kellee Kendell first met Defendant Clement Shanklin in 1989 in Columbus, Ohio. (Doc. 1, ¶ 6). Decades passed, and the two reconnected over Facebook in February 2017. (*Id.*). At that time, Plaintiff lived in Atlanta, Georgia, and the two would travel back and forth between Columbus and Atlanta to visit one another. (*Id.*, ¶ 7). Plaintiff alleges that, during these visits, Clement Shanklin "display[ed] a false sense of his resources" and "convinced Plaintiff" to cohabitate—with the promise that he "would carry his share of the load." This "empty" promise, says Plaintiff, was the first of many. (*Id.*). Yet, Plaintiff says she still believed Clement Shanklin's promises in November 2017, and he moved to Atlanta to live with her. Plaintiff claims that this arrangement was premised on a specific promise: Clement Shanklin "would reimburse [her] for his share of living expenses and pay her car note[.]" (*Id.*, ¶ 8). Plaintiff now claims this was all a scam.
> \*\*\*
> Based upon repeated assurances of repayment, Plaintiff says she "continued to divert funds she would have otherwise used to pay [] her credit cards, car note and mortgage to pay [Clement] Shanklin's living expenses[.]" (*Id.*, ¶ 10). And that was

>not the end of it according to Plaintiff. "Observing [her] significant stress and mental anxiety," Clement Shanklin "kept his confidence trick alive" by telling her he had a sizeable UPS retirement account and promising he would use these funds to repay her. (*Id.*). Plaintiff alleges Clement Shanklin's empty promises did her real harm because she ultimately had to sell her house "to avoid foreclosure." (*Id.*).
>
>When Plaintiff eventually realized Clement Shanklin's alleged scheme, she kicked him out of her house, and he returned to Columbus. (*Id.*, ¶ 11). Still, he "continued to reassure [her] that he would satisfy his debt," which included "living expenses, a new house, and a new car." (*Id.*). According to Plaintiff, Clement Shanklin estimated his debt to be $400,000. (*Id.*).
>
>Despite his alleged promises to repay, Plaintiff received nothing. So, in February 2020, she sued him . . . . (*See* Doc. 1).

(Doc. 47 at 2–4).

The parties mediated this case three times. (Doc. 122 at 2–4 (summarizing the contentious history of mediation in the case)). When Plaintiff attempted to walk away from a third mediated settlement, Defendant asked the Court to enforce the settlement. (Doc. 112). The parties came to an eventual agreement on April 8, 2022. (Doc. 114). Of note, the Settlement Agreement contained a list of material terms to which the parties agreed, including that Defendant pay Plaintiff "the remainder of the total sum owed at a rate of $325.00 per month until the settlement is paid in full"; that Defendant pays Plaintiff 35% of any additional income provided in his financial affidavit; and that Defendant seeks to pursue liquidation. (Doc. 114 at 2). The Court granted Defendant's motion (Doc. 122), and the parties then dismissed the case (Doc. 123). They stipulated their dismissal "on retention of jurisdiction by this Honorable Court in this matter with respect to any and all matters, such as enforcement regarding the settlement agreement giving rise to this joint dismissal request." (*Id.* (citing Doc. 114) (citation modified)). The agreement was silent as to payment method and schedules. (Doc. 114).

Over two years after dismissal, Defendant filed the present Motion to Modify Payment

2

Method. (Doc. 140). In it, he moves to modify the method and timing of his settlement payments. (*Id.*). Specifically, he asks (1) to make payments via Zelle, PayPal, "or another secure electronic payment service"; and (2) to make these payments "on or before the 10th day of every month until the settlement obligation is fully satisfied." (*Id.* at 2). Plaintiff opposes the Motion, and separately makes a "cross request for enforcement relief." (Doc. 142 at 1). She requests that: Defendant make his monthly settlement payments on or before the 5th of each month (Doc. 142 at 9–10); Defendant confirms he is complying "with his contractual excess income obligation" (*id.* at 11–12), via production of his income tax returns (Doc. 146 at 2); Defendant confirms he is complying with the liquidation requirement (Doc. 142 at 14); Plaintiff be granted leave to file a sur-reply (*id.* at 15–16); and Defendant increase his monthly settlement payments. (Doc. 146 at 2).

The Court ordered Plaintiff to file a notice indicating whether she has a Zelle or PayPal account. (Doc. 143; *see also* Docs. 144, 145). After two Court orders, Plaintiff eventually confirmed that she has a Zelle account. (Doc. 146 at 2). She is willing to give Defendant access to this account, but, in exchange, Plaintiff requests an order that settlement payments be increased to $475.00 per month and that Defendant produce tax returns within ten days "after each such return is filed." (*Id.*).

Defendant's Motion and Plaintiff's "cross-request[s]" are ripe for consideration.

## II. DISCUSSION

The Court construes the Motions (Doc. 140) and "cross-request[s]" (Docs. 142, 146) as motions to amend the settlement agreement, and will evaluate each motion in turn. Clear precedent from the Sixth Circuit guides the Court here and forbids the Court from making material alterations to the terms of a settlement agreement. *See Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir.

3

1988) (holding that a "court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement."); *Brown v. Cnty. of Genessee*, 872 F.2d 169, 173 (6th Cir. 1989). So, the Court will not make modifications to any material terms in this Settlement Agreement.

### A. Defendant's Requests

Defendant first moves to modify the method of his settlement payments to "Zelle, PayPal, or another mutually agreed-upon platform" to accommodate his medical condition. (Doc. 140 at 2). Plaintiff objects to this proposed modification, citing principles of contract law, the "unclean hands" doctrine, and the burden of proof for claiming changes in circumstances (Doc. 142 at 2–9). The Court finds Plaintiff's arguments unavailing.

The Sixth Circuit has held that the method of settlement payments is not a material term of a settlement agreement absent an express provision. *See Brock*, 841 F.2d at 154–55 (holding that because the settlement agreement contained no provision requiring payment via certified or cashier's check, it was not a "material term" to which the parties had to agree). And here, payment method is not among the list of material terms in the Settlement Agreement. (Doc. 114 at 1–2). Accordingly, adjusting the payment method of Defendant's monthly payments is not a material alteration to the settlement.

Defendant's Motion to Modify Payment Method is **GRANTED.** The parties are **ORDERED** to confer and agree to the specifics regarding which payment platform Defendant will make available to Plaintiff. **Within 30 days of the filing of this order,** they are **ORDERED** to file a joint status report informing the Court which platform they will use. Whatever the online platform, Defendant shall begin making those online payments in December 2025.

4

Defendant also moves to modify the payment schedule so that he "remit[s] each $325.00 payment on or before the tenth day of every month until the settlement obligation is fully satisfied." (Doc. 140 at 2).

A court may not allow the addition of a material term to a settlement. *See McKim v. NewMarket Techs., Inc.*, 370 F. App'x 600, 607 (6th Cir. 2010) (affirming district court's modification of a settlement where the district court "did not add material terms or burdens to the settlement."). Timing of payments is a material term to a settlement agreement. *See Campbell v. Premierfirst Home Health Care Inc.*, No. 2:22-CV-199, 2025 WL 1303497, at *3 (S.D. Ohio May 6, 2025) ("Still more, the payment schedule, 'in its exact form,' was a material term of the settlement."); *Rilley v. MoneyMutual*, LLC, No. CV 16-4001 (DWF/LIB), 2020 WL 1872923, at *2 n. 5, 3 (D. Minn. Apr. 14, 2020) (holding that a term requiring settlement payments "within seven days of the Effective Date" is a material term).

Here, Defendant is required to "pay to Plaintiff the remainder of the total sum owed at a rate of $325.00 per month . . ." (Doc. 114 at 2). The parties have agreed to a payment schedule of once per month. (*Id.*). But the agreement does not mandate what day of the month Defendant is required to make these payments. (*Id.*). Rather, the parties have engaged in a course of payment where Defendant receives his United Parcel Service pension on the first of each month (Doc. 126 at 2) and immediately thereafter, sends the payment to Plaintiff by mail (Doc. 129-1 at 1).

The Court will not impose Defendant's requested deadline on both of the parties; to do so would add a material term to the Settlement Agreement to which the parties did not agree. *See Campbell* 2025 WL, at *3; *Rilley*, 2020 WL, at *2 n. 5, 3. Accordingly, Defendant's request to modify the payment schedule is **DENIED.**

### B. Plaintiff's Cross Requests

First, like Defendant, Plaintiff asks for a modification of the payment schedule; but she asks to set the deadline for Defendant's monthly payments to the fifth of each month. (Doc. 142 at 9–10). As explained, the Court will not modify this material term. For the same reasons that the Court denied Defendant's request to modify the payment schedule, the Court **DENIES** Plaintiff's "cross-request" to do the same.

Second, Plaintiff requests a modification of the payment amount from $325.00 per month to $475.00 per month "in the interest of a bilateral modification." (Doc. 146 at 1). Essentially, Plaintiff conditions her cooperation upon the receipt of more money. But modifications are not for sale. Instead, the Settlement Agreement makes clear that Defendant owes Plaintiff $325.00 per month in settlement payments (Doc. 114 at 2), and the amount-due term is material to the agreement, as the agreement itself states. (*Id.* ("The foregoing terms constitute all terms identified as material terms to the settlement.")); *see also Brum v. Paragon Design Corp*, No. 18CV5399JMFKNF, 2019 WL 3222969, at *4 (S.D.N.Y. May 16, 2019) ("[N]o dispute exists that the parties agreed that Paragon will pay $35,000 to the plaintiffs, as a material term of the settlement agreement."), *report and recommendation adopted sub nom. Brum v. Paragon Design Corp.*, No. 18CV5399JMFKNF, 2019 WL 3219345 (S.D.N.Y. July 17, 2019). The Court will not change material terms so that Plaintiff may feel adequately compensated for her flexibility. Accordingly, Plaintiff's request for more money "in the interest of a bilateral modification" is **DENIED.**

Plaintiff's remaining "cross-request[s]" include a request for "information confirming compliance with [Defendant's] contractual excess income obligation" (Doc. 142 at 11), such as

Defendant's income tax returns. (Doc. 146 at 2). Plaintiff also requests "information confirming compliance with his contractual accelerated settlement debt liquidation." (*Id.* at 14). She bases her requests in part upon her "view that Defendant has not satisfied and/or may not satisfy" his contractual obligations to: (1) include 35% of additional income he receives outside of his financial affidavit, and (2) seek liquidation. (Doc. 142 at 11 (citing Doc. 114 at 2); *Id.* at 13 (citing Doc. 114 at 2)). Plaintiff's requests are **DENIED**.

Previously, Plaintiff filed a motion for Judgment Debtor Exam based on similar insecurities about Defendant's ability to comply with the monthly payments, the liquidation requirement, and the excess income requirement. (Doc. 125 at 5). The Court denied that motion. (Doc. 138 at 8). As the Court explained then, the Court will not allow Plaintiff to inquire into Defendant's financial information where Plaintiff has not presented evidence of Defendant's bad faith or inability to pay. (*Id.*). These issues have previously been litigated, and the Court declines to re-litigate them now.

Additionally, the excess income and debt liquidation requirements (Doc. 114 at 2) are material terms of the Settlement Agreement—the parties said so themselves. (*Id.* ("The foregoing terms constitute all terms identified as material terms to the settlement.")). And again, terms outlining the amounts owed are material. *See Brum*, 2019 WL 3222969, at *4. The Court cannot and will not alter these material terms by adding additional disclosure requirements to prove Defendant can make additional required payments. *See Brock*, 841 F.2d, at 154; *McKim*, 370 F. App'x, at 607. For similar reasons that the Court denied Plaintiff's Motion for a Debtor Exam (Docs. 125, 138), the Court again **DENIES** Plaintiff's requests to compel this information.

Finally, Plaintiff requests leave to file a sur-reply "in the event Defendant is permitted to provide expert medical testimony, opinion and/or qualified medical records." (Doc. 142 at 15).

7

Because no such testimony or records are present in this case, Plaintiff's request is **DENIED as moot.**

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion (Doc. 140) is **GRANTED IN PART and DENIED IN PART.** Plaintiff's "cross-request[s]" (Doc. 142) are **DENIED**. The parties are **ORDERED** to confer and agree on which online payment platform Defendant will make available to Plaintiff. **Within 30 days of the filing of this order,** the parties are **ORDERED** to file a joint status report informing the Court which platform they will use. Whatever the online platform, Defendant shall begin making those online payments in December 2025.

IT IS SO ORDERED.

Date: October 28, 2025 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE